UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MAPLE STREET HOLDINGS, LLC )<br>)<br>Plaintiff, )<br>)<br>)<br>v. )<br>)<br>)<br>ARCH SPECIALITY INSURANCE )<br>COMPANY )<br>)<br>Defendant. )<br>) | Civil No. 3:23-30127-MGM |

<u>MEMORANDUM AND ORDER CONCERNING DEFENDANT ARCH SPECIALTY
INSURANCE COMPANY'S MOTION FOR PROTECTIVE ORDER SEEKING ENTRY OF A
DISCOVERY CONFIDENTIALTY ORDER</u>
(Dkt. No. 126)

ROBERTSON, U.S.M.J.

I.  <u>Introduction</u>

This case concerns an insurance coverage dispute between plaintiff Maple Street Holdings, LLC ("MSH") and defendant Arch Specialty Insurance Company ("Arch") (Dkt. No. 1). Notwithstanding the age of the case, progress on discovery has been limited for reasons alluded to or set forth in the May 29, 2024, February 10, and April 2, 2025, orders of the presiding District Judge (Dkt. Nos. 36, 72, 92). Before the court is Arch's Motion for a Protective Order Seeking Entry of a Discovery Confidentiality Order (Dkt. No. 126) ("Arch's Motion"). MSH opposes the motion (Dkt. No. 129). Neither party has requested a hearing on Arch's Motion; accordingly, it is ripe for decision. For the reasons set forth below, Arch's Motion is GRANTED. A protective order in the form attached hereto as Exhibit 1, which is a modestly revised version of the order proposed by Arch, will be separately entered on the docket.

1

II.      <u>Relevant background</u>

According to the initial complaint, MSH, a limited liability company, owns premises known as 154-164 Maple Street in Springfield, Massachusetts ("Premises") (Compl. ¶¶ 2, 6). Arch issued a commercial general liability policy to MSH effective March 3, 2022, to March 3, 2023 (Compl., ¶ 7). On or around February 10, 2023, MSH's property manager was informed that stone and brick had fallen from the façade of a section of the Premises (Compl. ¶ 12). Over some five days in February 2023, Whitman Restoration Incorporated performed masonry stabilization and repaired damage to the Premises, for which it billed MSH $23,255.00 (Compl. ¶ 16). On February 21, 2023, MSH submitted a claim to Arch for coverage for the cost of the repairs (Compl. ¶ 17). Over the following eight months, this modest claim ballooned into an estimate for repairs totaling $13,161,187.09 that MSH submitted to Arch (Compl. ¶ 61). The complaint asserts claims of breach of contract, violation of the implied contractual duty of good faith and fair dealing, and violation of Mass. Gen. Laws chs. 93A, and 176D and seeks a declaration of coverage for MSH losses (Compl. ¶¶ 73-106). MSH filed its initial complaint on November 27, 2023 (Dkt. No. 1). It filed an amended complaint on December 18, 2023, to address the court's order to show a basis for diversity jurisdiction (Dkt. Nos. 4, 5, Am. Compl., ¶¶ 3-12, 17).

The Court held a Rule 16 scheduling conference and entered a scheduling order on April 23, 2024 (Dkt. Nos. 23, 24). On May 8, 2024, Selim Zherka ("Zherka") filed a motion to intervene as a self-represented plaintiff, asserting as grounds for intervention that he had acquired by assignment a 1% interest in MSH's legal claims arising from its coverage dispute with Arch, that this assignment gave him a right to represent himself in the action, and that his interests might not be adequately represented if he were not permitted to intervene (Dkt. No. 26

at 2, 5-6). With his motion to intervene, Zherka filed a proposed amended complaint that would have added as defendants Athens Program Insurance Services, LLC, NSM Insurance Group, and Thornton Tomasetti, described, respectively, as claims administrator for Arch, a specialty insurance provider, and a consulting firm specializing in engineering (Dkt. No. 27 ¶¶ 17-19). The court denied Zherka's intervention motion on May 29, 2024, rejecting his claim that he was entitled to intervene as of right, and ruling, as to his request for permissive intervention, that granting the motion would not promote efficient resolution of the case (Dkt. No. 36).

On June 5, 2024, Zherka, representing himself, filed suit against Arch, Athens Program Insurances Services, LLC, NSM Insurance Group, and Thornton Tomasetti seeking declaratory relief and monetary damages for Arch's alleged breach of contract and delayed payment to MSH for damage to the Premises. *See Zherka v. Arch Specialty Ins. Co.*, No. 24-cv-30077 (D. Mass. filed June 5, 2024) ("*Zherka I*"). The court dismissed *Zherka I* on October 8, 2024, on the ground that it was an obvious attempt to circumvent the court's ruling denying Zherka's intervention motion and involved the same subject matter as the instant action. *Zherka I* (Dkt. No. 26). Zherka appealed this dismissal. *See Zherka v. Arch Specialty Ins. Co.*, No. 24-1919 (1st Cir. filed Oct. 16, 2024).

On January 9, 2025, Arch moved for entry of a protective order governing the confidentiality of information produced in discovery, relying in significant part on an assertion that, in early December 2024, after Arch had engaged in discovery without a protective order in place, Zherka had used, or caused to be used, information Arch produced in discovery to communicate Chapter 93A demands to Arch, Thornton Tomasetti, Athens Administrators, Young & Associates, NSM Insurance, and Lisa Davey and Stephanie Nussbaum of Thornton Tomasetti (Dkt. No. 56 at 2). On December 11, 2024, counsel for Arch was emailed a copy of a

3

so-called Assignment of Interest in Claims Agreement, by which MSH purported to assign to Zherka 100% of MSH's interest in any and all legal claims MSH might have against counsel who had entered an appearance for Arch in the instant matter. The assignment stated that MSH had been involved in litigation involving the attorneys representing Arch, and that Zherka had evidence of bad acts by the attorneys (Dkt. No. 56 at 3). When Arch's counsel asked MSH's counsel whether MSH would sign on to a confidentiality agreement that would go at least some way toward ensuring that Zherka, a non-party to the litigation, would not misuse information Arch produced in discovery in the instant action, MSH's counsel responded that MSH would not enter into a confidentiality agreement, that all documents would be shared with Zherka because Zherka was MSH's agent and designated point of contact in this litigation, and that Zherka would be MSH's Rule 30(b)(6) designee (Dkt. No. 56 at 4). Following this exchange, Zherka sent additional Chapter 93A demands to Thornton Tomasetti associates accusing them of professional ethical violations (Dkt. No. 56 at 4) and MSH filed an opposition to entry of a discovery confidentiality agreement (Dkt. No. 63).

On February 7, 2025, Zherka, representing himself, filed suit against associates of Thornton Tomasetti and Young and Associates, seeking damages for alleged MSH losses that Zherka attributed to Arch's delay and failure to pay MSH's claims. *See Zherka v. Davey*, No. 25-cv-30024 (D. Mass. filed February 7, 2025) (*Zherka II*"). The presiding District Judge denied Zherka's motion to consolidate *Zherka II* with the instant action. *See Zherka v. Davey*, No. 25-cv-30024 (Dkt. No. 20). Zherka appealed this ruling. *See Zherka v. Davey*, No. 25-1391 (1st Cir. filed April 24, 2025). *Zherka II* remains pending in this court.

In the meantime, in the instant action, on February 10, 2025, the presiding District Judge scheduled a hearing on Arch's motion for an order protecting the confidentiality of discovery

4

material that directed all counsel for MSH to attend in person and be prepared to address whether the judge should consider imposing Rule 11 sanctions or revoking *pro hac vice* admissions for allowing (or at least tolerating) Zherka, their client's agent and designated point of contact, to file duplicative *pro se* lawsuits and otherwise misuse the civil justice system (Dkt. No. 72). Some five days after the hearing, MSH's counsel notified the Court that their service as counsel for MSH had been terminated effective February 26, 2025 (Dkt. No. 81). Immediately thereafter, Zherka filed a motion to substitute himself as plaintiff in place of MSH and to consolidate the instant action with *Zherka II* (Dkt. No. 82). The court denied Zherka's fourth attempt to circumvent the rule that precludes a business entity from being represented by a non-lawyer and further noted that Zherka's "conduct in this case and the two related cases he has filed before this court, as well as his history of misconduct in the Southern District of New York, also weighs heavily against him." The Court notified MSH that if successor counsel did not enter an appearance within 14 days, MSH's case against Arch would be dismissed for willful failure to prosecute, failure to comply with court orders, and as a sanction for MSH's continuing litigation misconduct (Dkt. No. 92).

Successor counsel entered appearances on April 14 and 16, 2025 (Dkt. Nos. 99, 107). The case was referred to the undersigned for pretrial management on April 16, 2025 (Dkt. No. 106). Over the ensuing months, modest progress was made in discovery. MSH's counsel also suggested that MSH would be adding a previously unidentified claim for coverage for roof damage that allegedly occurred during the policy period (Dkt. No. 124).

In the course of this litigation, Zherka has not hesitated to accuse Arch and those it has relied on to assist it in assessing coverage for alleged damages to the Premises of fraud, misrepresentations to the Court, and related misconduct (e.g., Dkt. No. 38 at 8; Dkt. No. 91 at 7;

5

Dkt. No. 94 at 2; Dkt. No. 95 at 13-14). These foregoing references do not include the numerous Chapter 93A demands and threats of negative publicity that Zherka has sent or caused to be sent to Arch's attorneys and those assisting Arch in evaluating MSH's expanding coverage claims (Dkt. Nos. 127, 128). Zherka has supported his quest to take over for MSH as plaintiff by insisting vociferously that he is the sole party with a legal and financial interest in pursuing MSH's coverage claim against Arch (Dkt. No. 95 at 1-2). Given Zherka's assertions concerning his position and entitlement, it is appropriate to take into account the source of these accusations and claims of financial interest.

In February 2015, Zherka pled guilty to one count of conspiracy to make a false statement to a bank and to sign a false federal income tax return in violation of 18 U.S.C. § 371. *See Zherka v. Bondi*, 140 F.4th 68, 70 (2d Cir. 2025). In a recent opinion rejecting Zherka's challenge to the constitutionality of 18 U.S.C. § 922(g)(1)'s prohibition against possession of a firearm by a convicted felon, the Second Circuit stated that, "[a]lthough Zherka's offense conduct was nonviolent, his crime was serious; he defrauded federally insured banks of tens of millions of dollars and flouted the tax laws of this country to the tune of over one million dollars in tax loss. Zherka was sentenced to 37 months' imprisonment and three years of supervised release, and ordered to pay approximately $8.5 million in fines, restitution, and forfeiture." *Id.* at 70-71. Some ten years earlier, the Second Circuit affirmed the district court's decision to incarcerate Zherka pending trial on the charges that resulted in his guilty plea (an unusual decision in a financial fraud case) based on the district court's findings, entered after a lengthy pretrial detention hearing, that Zherka was a risk of flight and "a danger to the community by reason of prior instances of violence (and more recent boasts about that violence), as well as a

history of obstruction of justice ….." *United States v. Zherka*, 592 F. App'x 35, 36 (2d Cir. 2015) (unpublished).

There may be some merit to MSH's increased coverage claim in the instant action. Given Zherka's history of fraud, however, including, as it does, a finding of obstruction of justice, his present claims of an exclusive financial and legal interest in MSH's coverage claims, and the fact that the insured's losses have grown from an initial $23,255.00 for repairs to an amount that, according to July 2025 correspondence from Zherka now exceed $17 million (Dkt. No. 128-9 at 11), Arch is entitled to conduct a fair, but full and unfettered investigation of the claim, and to cooperation – not obstruction and threats – in discovery if this case is to go forward.

    III.    <u>Arch's Renewed Motion for a Protective Order</u>

  A. Legal standards

Federal Rule of Civil Procedure 26(c), which governs the issuance of protective orders in discovery provides, in pertinent part, that a court may "issue a protective order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by, among other things, limiting the disclosure of documents obtained during discovery upon a showing of good cause. "'Because discovery is a private process between the parties to an action (even if governed by specific rules and managed by trial judges),' the documents and materials exchanged therein are generally regarded 'as outside the judicial function and therefore not presumptively accessible.'" *In re Gen. Motors LLC Ignition Switch Litig.*, Nos. 14-MD-2543 (JMF), 14-MC-2543 (JMF), 2015 WL 4522778, at *2 (S.D.N.Y. July 24, 2015) (quoting *United States v. Smith*, 985 F. Supp. 2d 506, 519 (S.D.N.Y. 2013); citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984)). "Nevertheless, just because the public is not presumed to have access

7

to pretrial discovery materials, it does not follow that parties should be – or are – *barred* from sharing them publicly, particularly in light of Rule 26(c)'s enduring 'good cause' requirement. Instead, it is well established that, '[i]n the absence of … a [Rule 26(c)] protective order, parties to a lawsuit may disseminate materials obtained during discovery as they see fit.'" *Id.* at *3 (quoting *Schiller v. City of N.Y.*, No. 04-Civ-7921 KMK JCF, 2007 WL 136149, at *2 (S.D.N.Y. Jan. 19, 2007) (internal quotation remarks omitted)). Nonetheless, it remains the case that "[t]he liberal discovery authorized by the Federal Rules of Civil Procedure is 'provided for the sole purpose of assisting in the preparation and trial, or the settlement of litigated disputes.'" *United States v. Mass. Gen. Hosp., Inc.*, CIVIL ACTION NO. 15-11890-ADB, 2021 WL 11749764, at *5 (D. Mass. Feb. 16, 2021) (quoting *Seattle Times Co.*, 467 U.S. at 34).

The burden of showing good cause for entry of a protective order is on the party seeking entry of the order. *See Gardner v. Cape Cod Healthcare, Inc.*, 344 F.R.D. 127, 132 (D. Mass. 2023) (citing *Heagney v. Wong*, CIVIL ACTION NO. 15-40024-TSH, 2016 WL 290173, at *3 (D. Mass. May 18, 2016)). "'Rule 26(c) is highly flexible, having been designed to accommodate all relevant interests as they arise. The "good cause" standard in the Rule is a flexible one that requires an individualized balancing of the many interests that may be present in a particular case.'" *Gill v. Gulfstream Park Racing Ass'n*, 399 F.3d 391, 402 (1st Cir. 2005) (quoting *United States v. Microsoft Corp.*, 165 F.3d 952, 959-60 (D.C. Cir. 1999)) (alterations omitted). "A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements." *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986). The First Circuit has acknowledged that "[j]udges have found in many cases that effective discovery, with a minimum of disputes, is achieved by affording relatively generous protections to discovery material." *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir.

8

1993); *see also, e.g., Loomer v. Maher*, Case No. 5:24-cv-625-JSM-PRL, 2025 WL 1992373, at *1 (M.D. Fla. July 17, 2025) (discussing entry of blanket protective orders to facilitate discovery; collecting cases in which the court entered blanket protective orders).

B.  Existence of Good Cause

Federal Rule of Civil Procedure 26(c) allows a court "to grant a protective order 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense' in the discovery process." *Lively v. Wayfarer Studios LLC*, 24-cv-10049 (lead case); 25-cv-449, 2025 WL 815364, at *1 (S.D.N.Y. Mar. 13, 2025) (quoting Fed. R. Civ. P. 26).  A court may enter a protective order when such an order is "necessary to expedite the flow of discovery material …." *Loomer*, 2025 WL 1992373, at *2.

Arch's principal reason for requesting entry of the protective order is to prevent Zherka's use of information Arch produces in discovery as fuel for additional Chapter 93A correspondence and lawsuit activity by Zherka.  While the extent of Zherka's influence on the discovery requests propounded by MSH is unknown on this record, the information produced by Arch has been disclosed to Zherka and it is a reasonable inference that Zherka's goal in obtaining material produced by Arch is to use this material for purposes of constructing further theories of fraud unrelated to resolution of what was, at the outset of this litigation, a standard insurance coverage claim.  The court finds that there is good cause for entry of a protective order when Zherka, as a non-party, has brought claims against Arch, its agents, and its counsel, some of which are facially frivolous, and has levelled accusations of fraud broadly defined, all in the context of an insurance coverage claim that has, according to Zherka, increased exponentially in value.  The presiding District Judge has already found that Zherka's conduct in this case and the two related cases he has filed as a self-represented party have had a severely negative effect on

9

progress in this litigation and that this conduct is consistent with his misconduct in other litigation (Dkt. No. 92). Since the judge made that finding, Zherka has filed a third related lawsuit in this court, naming as defendants Arch, Zelle LLP, Seth Jackson, Makenzie Moy, Kristian Smith, Egan, Flanagan, P.C., Michael McDonough, Paul Bromwich John Egan, Roger Shulman, and Larry Couvillon. *See Zherka v. Arch Specialty Ins. Co.*, No. 3:25-cv-30160-MGM (D. Mass. filed September 9, 2025). Arch's filings show that, notwithstanding the Judge's warning, Zherka has continued his attempts to obstruct and intimidate Arch, its counsel, and its agents. As recently as July 24, 2025, Zherka sent an email to Arch's litigation counsel, with copies to Arch employees, and Athens Administrators, in which he informed Arch's attorney that he intends to "file a scathing federal lawsuit naming you, your firm, and other attorneys personally for fraud on the court, civil conspiracy, tortious interference, professional misconduct and intentional infliction of emotional distress and other causes of action" (Dkt. No. 128-9 at 2). It is beyond dispute that Zherka is using material Arch previously produced as a basis for the Chapter 93A demand letters he has sent or caused to be sent and for the resulting complaints (e.g., Dkt. No. 128-3 at 5; Dkt. No. 128-8 at 3-5; Dkt. No. 128-9 at 6-8; Dkt. No. 128-10 at 3-6). His conduct has greatly increased the costs of litigating what his present counsel acknowledged at a hearing before the undersigned is a standard insurance coverage dispute that has made – and continues to make – unwarranted demands on court resources.

  MSH has not sufficiently explained what harm it would experience if a protective order enters, nor has MSH identified any legitimate objection to an order that confines MSH's use of Arch's information exclusively to this litigation. *See Gabriel v. Superstation Media, Inc.*, Civil Action No. 13-12787-NMG, 2014 WL 12796359, at *4 (D. Mass. Nov. 7, 2014). This is not a case in which material Arch produces in discovery will have implications beyond this routine

insurance dispute.  *Contrast, e.g., Baker v. Liggett Grp., Inc.*, 132 F.R.D. 123, 126 (D. Mass. 1990) (denying entry of an umbrella protective order when litigants in other cases claiming harm from tobacco use might benefit from discovery produced by the tobacco company in the pending litigation).  MSH has provided no support for its contention that Arch has an obligation to identify documents it believes include confidential material to justify entry of protective order.  To the contrary, courts often enter blanket protective orders without requiring a showing of good cause on agreement of the parties.  *Gabriel*, 2014 WL 12796359, at *3.  This is moreover, a case in which, because of the history of MSH's litigation misconduct, the court anticipates granting "relatively generous protections to discovery material."  *Poliquin*, 989 F.2d at 535.  For the foregoing reasons, the court grants Arch's motion for entry of an order protecting confidential discovery material.

      While the court has repeatedly ruled that Zherka is not a party to this litigation, Zherka has repeatedly sought to interject himself into it and has been described as MSH's agent, designated point of contact for this litigation, and the individual who will serve as MSH's Rule 30(b)(6) designee.  The protective order proposed by Arch identifies Zherka as a representative of MSH to whom confidential discovery materials may be disclosed subject to the terms of the protective order.  In view of MSH's representations about Zherka's role in this litigation and his claims about his role and status in various filings, the court considers it appropriate to treat him as a representative of MSH to whom confidential discovery material may be disclosed subject to terms of the protective order.

      The protective order is attached hereto as exhibit 1 and will be docketed separately.

    C.  Additional Considerations.

Some additional observations are in order. First, on February 2, 2025, the presiding District Judge entered an order requiring all counsel for MSH to attend a hearing in person and be prepared "to discuss if they are subject to consideration for sanctions under Fed. R. Civ. P. 11 and this court's inherent authority [to impose sanctions] for litigation conduct, including allowing their client's 'agent and designated point of contact in this litigation' and Rule 30(b)(6) deponent to file two separate lawsuits related to this litigation pro se" (Dkt. No. 72). MSH's present counsel, attorneys Rex Whitehorn and Jeremy Powers, are now in precisely the same situation as were prior counsel for MSH. While purporting not to represent Zherka, the opposition submitted over Whitehorn's signature to Arch's Motion echoes the arguments and objections raised by MSH's prior counsel in advance of the Court's February 2, 2025 order; contends without foundation that Arch has failed in its discovery obligations and acted in bad faith because it has reasonably pressed for entry of a protective order in advance of producing additional discovery responses and has refused to enumerate, on a document by document basis, what information Arch is claiming is confidential in advance of entry of a protective order; and defended conduct by Zherka in this litigation that the judge has already found to be litigation misconduct (Dkt. Nos. 92, 129). While denying that he represents Zherka, Whitehorn has informed Arch that he believes Zherka should be joined as a party under Fed. R. Civ. P. 25(c) notwithstanding the court's order denying Zherka's Rule 25(c) motion and indicated that he was contemplating filing a motion for this purpose (Dkt. No. 128-14). Furthermore, MSH's proposed revisions to the protective order, communicated by Whitehorn to Arch's counsel (Dkt. No. 128-16), propose an untenable process for confidential designations that will waste court resources (Dkt. No. 128-16 at 5, ¶ 3; 7 at ¶ 9), expressly permit Zherka to use any material designated as confidential in the event that he deems those materials to be evidence of fraud,

12

misrepresentation, perjury, obstruction of justice, bad faith litigation conduct, or violation of ethical or statutory duties and provides that information produced by Arch and designated as confidential under the terms of the protective order will not be protected if Zherka, apparently in his sole discretion, elects to identify the information as evidence of alleged fraud (Dkt. No. 128-16 at 10, ¶¶ 23, 24). And, on September 9, 2025, Zherka filed the third related lawsuit in this court, this time naming Arch and Arch employees, its vendors, and its counsel.

Notwithstanding this disturbing record, rather than issue a further show cause order at this time directed to MSH's counsel, the court has elected to grant Arch's motion for a protective order so that discovery may proceed, in a final effort to enable the parties and the court to address this coverage claim on its merits.

Second, that documents are designated as confidential under the protective order does not mean that the documents are sealed. If any documents produced through discovery are filed in support of a motion brought in this case, those documents will be judicial records to which the public presumptively has access, subject to any claimed confidentiality. *See generally, United States v. Kravetz*, 706 F.3d 47 (1st Cir. 2013).

Third, "just because the public is not presumed to have access to discovery materials, it does not follow that parties should be – or are – *barred* from sharing them publicly …." *In re Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 4522778, at *3. To the extent Arch produced discovery to MSH in the absence of a protective order, MSH was entitled to disclose those documents to others, including Zherka (although he was not entitled to use it in ways this court has deemed to rise to the level of litigation misconduct). Any previously produced documents cannot, at this point, be designated as confidential under the terms of the protective order.

Documents designated as confidential when they were produced will be deemed subject to the terms of the protective order.

    IV.    Conclusion

For the foregoing reasons, Arch's Motion is GRANTED. The protective order attached hereto as Exhibit 1 will be separately docketed.

It is so ordered.

Dated: September 25, 2025            /s/ Katherine A. Robertson
                                                                   KATHERINE A. ROBERTSON
                                                                  U.S. MAGISTRATE JUDGE