UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MAPLE STREET HOLDINGS, LLC,  )
                        )
      Plaintiff,        )
v.                       )
                        )   Dkt. No. 3:23-cv-30127-MGM
ARCH SPECIALTY INSURANCE    )
COMPANY,              )
                        )
      Defendant.      )

<u>MEMORANDUM & ORDER REGARDING: (1) MOTION FOR SUBSTITUTION
(OR, IN THE ALTERNATIVE, JOINDER) OF SELIM ZHERKA AS PLAINTIFF
PURSUANT TO FED. R. CIV. P. 25(c) AND TO ENFORCE FED. R. CIV. P. 17(a);
(2) MOTION OF SELIM ZHERKA, PUTATIVE REALY PARTY IN INTEREST,
FOR A LIMITED STAY OF DISCOVERY; (3) MOTION FOR LEAVE TO FILE
PUTATIVE REAL PARTY IN INTEREST/MOVANT'S REPLY IN SUPPORT OF
MOTION FOR SUBSTITUTION OR, IN THE ALTERNATIVE, JOINDER; (4)
EMERGENCY MOTION FOR A PROTECTIVE ORDER TO EXCLUDE NON-
PARTY SELIM ZHERKA FROM ATTENDING DEPOSITIONS UNDER FED. R.
CIV. P 26(c)(1)(E); (5) NON-PARTY SELIM ZHERKA'S MOTION FOR LEAVE TO
FILE LIMITED SUPPLEMENTAL SUBMISSION REGARDING MOTION FOR
PROTECTIVE ORDER (ECF 186); and (6) DEFENDANT'S MOTION TO STRIKE
REMAINING IMPROPER NON-PARTY COURT FILINGS (DOCKET NOS. 188
AND 202)</u>
(Dkt. Nos. 161, 164, 183, 186, 202, 205)

## I.    INTRODUCTION

This is an omnibus order resolving multiple motions currently pending in this

proceeding. Non-party Selim Zherka ("Mr. Zherka") has moved pursuant to Fed. R.

Civ. P. 25(c) to be substituted for the plaintiff, Maple Street Holdings, LLC,

("Plaintiff" or "Maple Street") in its insurance coverage dispute against Arch

Specialty Insurance Company ("Arch" or "Defendant"), or, in the alternative, to be

joined as a party (Dkt. No. 161).[1] Mr. Zherka premises his motion on Maple Street's purported assignment to him of all its rights vis-à-vis the litigation. In conjunction with his substitution motion, Mr. Zherka seeks a limited stay of discovery pending its resolution (Dkt. No. 164). Arch opposes both motions, arguing that the doctrines of res judicata and law of the case bar substitution and that Mr. Zherka has not met the requirements for imposition of a discovery stay (Dkt. Nos. 165, 168). Maple Street filed a motion in support of Mr. Zherka (Dkt. No. 170), and Mr. Zherka seeks leave to file a reply brief in further support of his motion (Dkt. No. 183).

Also pending is a motion by Arch pursuant to Fed. R. Civ. P. 26(c)(1)(E) for a protective order excluding Mr. Zherka from attending the deposition of Dominica O'Neill, who is to be deposed both in her individual capacity and as Maple Street's Fed. R. Civ. P. 30(b)(6) designee, and all future depositions in this litigation (Dkt. No. 186).[2] Defendant maintains that a protective order precluding Mr. Zherka from attending depositions is necessary because his presence will obstruct the proceedings (Dkt. Nos. 186, 199, 209). Plaintiff opposes the motion arguing that Defendant has not met its burden to establish entitlement to a protective order

---

[1] Although Mr. Zherka asserts that he is seeking joinder as an alternative to substitution, his motion is devoid of any reference to Fed. R. Civ. P. 19, which governs joinder.

[2] At the time Arch filed its motion, it sought emergency relief on the ground that the deposition of Ms. O'Neill had been suspended pending resolution of the protective order issue. However, the district judge ordered the deposition to be continued and denied emergency relief because it appeared to the court that "both parties were aware that this dispute remained unresolved well in advance of the scheduled deposition, yet neither party brought the issue to the court's attention until [the day of the deposition]" (Dkt. No. 189).

under Rule 26(e), that Mr. Zherka will not obstruct the proceedings but rather will be akin to a "potted plant" at any deposition he attends, and that Mr. Zherka's presence is integral to counsel's effective representation of Plaintiff (Dkt. Nos. 206, 208). Mr. Zherka filed his own response, opposing imposition of the protective order (Dkt. No. 188), as well as a motion for leave to file a supplemental submission (Dkt. No. 202). Arch moved to strike both of Mr. Zherka's submissions (Dkt. No. 205), and, at the hearing on Arch's motion for a protective order, counsel for Maple Street indicated that he had no objection to striking Mr. Zherka's non-party filings.

For the reasons set forth herein, the court: GRANTS Mr. Zherka's motion to file a reply brief regarding his motion for substitution or joinder (Dkt. No. 183) but DENIES his motion for substitution or joinder (Dkt. No. 161), rendering his motion for a stay of discovery MOOT (Dkt. No. 164); GRANTS Defendant's motion for a protective order enjoining Mr. Zherka from attending depositions in this matter (Dkt. No. 186); and GRANTS Defendant's motion to strike Mr. Zherka's non-party filings at Dkt. Nos. 188 and 202 (Dkt. No. 205).

## II.   BACKGROUND

Maple Street commenced the above-captioned litigation on November 27, 2023, alleging that Arch breached a contract of insurance and engaged in unfair and deceptive practices in connection with settling a February 10, 2023, loss to Maple Street's property located at 154-164 Maple St., in Springfield, Massachusetts (Dkt. Nos. 1, 5). For ease in differentiating between this and several successive related lawsuits discussed below, this matter will be referred to as the "First Action."

3

The court issued an initial scheduling order in the First Action on April 23, 2024, setting an October 30, 2024, deadline for completion of non-expert discovery (Dkt. No. 24). Shortly thereafter, Mr. Zherka filed a motion to intervene in the First Action, asserting that Maple Street had assigned him a one percent interest in the outcome of the litigation (Dkt. Nos. 25-27). Mr. Zherka's proposed amended complaint in intervention sought to add Athens Program Insurance Services, LLC ("Athens," the claims administrator), NSM Insurance Group ("NSM," a specialty insurance provider that has a risk sharing agreement with Arch), and Thornton Tomasetti (the engineering firm hired to inspect the premises to determine the cause of the loss) as defendants and assert claims against them for unfair and deceptive claims settlement practices and tortious interference with a contractual relationship (Dkt. No. 27).

The court denied Mr. Zherka's motion on May 29, 2024, finding that he failed to demonstrate his entitlement to intervention as of right pursuant to Fed. R. Civ. P. 24(a) based on his acquisition of the post-hoc partial assignment of Maple Street's potential recovery because he could not show that resolution of the action would harm his interests or that Maple Street was inadequately represented in the litigation (Dkt. No. 36). In addition, the court concluded that Mr. Zherka's intervention would not promote efficient resolution of the case and, therefore, declined to authorize permissive intervention under Fed. R. Civ. P. 24(b). The court reasoned that Mr. Zherka's proposed complaint sought to "unnecessarily complicate a relatively straightforward insurance dispute by adding parties and claims that

4

[Maple Street] chose to not include in their original complaint," and that a premature attempt by Mr. Zherka to obtain discovery "indicate[d] a disregard for the Federal Rules of Civil Procedure" that risked "needlessly protracting the[ ] proceedings" (Dkt. No. 36). The court also referenced Mr. Zherka's conviction for a crime involving deceit and previous judicial findings regarding Mr. Zherka's "history of obstruction of justice" as pertinent, but not dispositive considerations (Dkt. No. 36). Mr. Zherka did not appeal this order.

One week after the court denied Mr. Zherka's motion to intervene in the First Action, on June 5, 2024, Mr. Zherka filed a pro se complaint against Arch, Athens, NSM, and Thornton Tomasetti in *Zherka v. Arch Specialty Ins. Co.*, et al., 3:24-cv-30077-MGM, referred to as the "Second Action." As in his proposed amended complaint in intervention in the First Action, Mr. Zherka asserted claims for declaratory relief, breach of contract, breach of the implied covenant of good faith and fair dealing, and unfair and deceptive claims settlement practices against Arch, as well as claims for unfair and deceptive claims settlement practices and tortious interference against Athens, NSM, and Thornton Tomassetti, and added a claim for professional negligence against Thornton Thomasetti (Second Action at Dkt. Nos. 1, 11). Mr. Zherka attached to his complaint assignment agreements with Maple Street and Silas Investment LLC ("Silas," alleged to be the mortgagor of the property and loss payee of the policy), dated May 30, 2024, and May 8, 2024, respectively, with Maple Street assigning him all of its "rights, title and interest to litigate, pursue and collect any and all damages and awards for any and all present

5

and future legal claims including but not limited to bad faith claims that [Maple Street] has against Thornton Thomasetti, Young and Associates, … NSM Insurance Company, and Athens Administrators [r]egarding injury sustained by [Maple Street] for their role in mishandling [the claim] on behalf of [Arch]," and Silas "One Hundred Percent (100%) of all … rights, title, and interest in any and all present and future legal claims against [Arch] and any other defendants known and unknown relating to loss date of February 10, 2023 at [the Property]" (*id*. at Dkt. No. 11-1, at 6, 8). The court dismissed the Second Action with prejudice on the defendants' motion pursuant to the "prior pending action doctrine," given the pendency of the First Action (*id*. at Dkt. Nos. 12, 26). The court saw Mr. Zherka's complaint as "an obvious attempt to circumvent [its order in the First Action] denying [him] leave to intervene in that action" (*id*. at Dkt. No. 26). Mr. Zherka filed a notice of appeal with respect to the court's October 8, 2024, order dismissing the case (*id*. at Dkt. No. 29).

On October 9, 2024, the parties in the First Action sought an extension of time to complete non-expert discovery, which the court granted, setting a new deadline of January 30, 2025 (Dkt. Nos. 40-42). In the assented-to motion filed by Arch, it represented that the parties had been exchanging written discovery but needed more time to schedule and take depositions and complete third-party discovery (Dkt. No. 40). On January 9, 2025, the parties again sought an extension of the discovery deadline, representing that written discovery was proceeding and that the parties were awaiting completion of that process to schedule and take

depositions, that the parties were awaiting an order on a motion to compel by Plaintiff, that Defendant would be filing a motion for a protective order and would not produce further documents until that motion was decided, and that responses to many of the approximately twenty third-party subpoenas issued remained outstanding (Dkt. No. 57).

While the second motion to extend the discovery deadline in the First Action was pending, on February 7, 2025, Mr. Zherka filed a second pro se action naming Lisa Davey ("Davey," a senior principal and engineer at Thornton Thomasetti), Laura Bashaw ("Bashaw," an engineer at Thornton Thomasetti), Mark Andrews ("Andrews," a principal at Thornton Thomasetti), Stephanie Nussbaum ("Nussbaum," a principal at Thornton Thomasetti), Jim Chilson ("Chilson," a civil engineer at Young & Associates), and Young & Associates (a professional services organization providing forensic construction and property damage consulting services), all of whom Mr. Zherka characterized as "undisclosed agents" of Arch, as defendants and asserting claims for breach of contract, tortious interference, fraud, fraud in the inducement, civil conspiracy, conflict of interest, professional negligence, professional malpractice, collusion, and violations of Mass. Gen. Laws ch. 93A and 176D in *Zherka v. Davey et al.*, 3:25-cv-30024-MGM, referred to as the "Third Action" (Third Action at Dkt. Nos. 1, 6). Mr. Zherka asserted the right to bring the legal claims of Maple Street and Silas against these defendants based on Maple Street's and Silas's assignment to Mr. Zherka, on January 7, 2024, of "One Hundred (100%) Percent of all [their] rights, title and interest in any and all

7

present and future legal claims against [a list of individuals including Davey, Bashaw, Andrews, Nussbaum, and Chilson] for their actions taken that are related to the Litigation" (*id*. at Dkt. Nos. 6, ¶ 12; 6-1, at 6-7).

Shortly after filing his complaint in the Third Action, on February 27, 2025, Mr. Zherka filed motions to substitute himself as plaintiff in the First Action and to consolidate the First Action with the Third Action based on Maple Street's February 25, 2025, assignment to Mr. Zherka of all "right, title and interest in any and all present, past and future claims against [Arch] and/or any other defendants known and unknown, including all claims pending in [the First Action]" (Dkt. No. 82; Third Action at Dkt. Nos. 15; 15-1, at 2). Mr. Zherka invoked Fed. R. Civ. P. 25(c), which provides that, "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." *See* Fed. R. Civ. P. 25(c). Recognizing the "considerable leeway to allow [or not allow] the substitution of parties in order to facilitate the conduct of the litigation," *Potvin v. Speedway, LLC*, 891 F.3d 410, 416 (1st Cir. 2018), the court declined to order substitution. In its April 2, 2025, Order, the court reasoned that doing so would not facilitate the conduct of the litigation and would "violate the long-established rules forbidding non-attorneys from representing business entities" (Dkt. No. 92; *see also* Third Action at Dkt. No. 20 (denying Mr. Zherka's motion to substitute plaintiff and consolidate cases in this case for the same reasons as articulated in Dkt. No. 92 in the First Action)). The court noted that "Mr. Zherka's conduct in this case and the

two related cases he has filed before this court, as well as his history of misconduct in the Southern District of New York, also weighs heavily against him" (Dkt. No. 92). Mr. Zherka filed motions to alter or amend the orders denying substitution and consolidation, which the court summarily denied on April 11, 2025 (Dkt. Nos. 94, 98; Third Action at Dkt. Nos. 26, 28). Mr. Zherka appealed the court's denial of his motions to substitute and consolidate to the First Circuit (Dkt. No. 101; Third Action at Dkt. No. 29).

After denying Mr. Zherka's motions to substitute and consolidate, the court entered an order finding the second motion for extension of time to complete discovery in the First Action (Dkt. No. 57) moot and referred the case to the magistrate session for full pretrial management (Dkt. Nos. 105-106). Following a status conference, on June 9, 2025, the court set a November 28, 2025 deadline for completion of non-expert discovery (Dkt. Nos. 117, 121).

On September 9, 2025, Mr. Zherka filed yet another pro se complaint, once again naming Arch as a defendant, along with two law firms representing Arch (Zelle LLP and Egan, Flanagan and Cohen, P.C.), six lawyers at each of those two firms (Seth V. Jackson, Makenzie Moy, and Kristian Smith at Zelle LLP, along with Michael McDonough, Paul Bromwich, and John Egan at Egan, Flanagan and Cohen, P.C.), Arch General Counsel (Regan Schulman), and a former claims specialist for Arch (Larry Couvillon) in *Zherka v. Arch, et al.*, 3:25-cv-30160-MGM, referred to as the "Fourth Action." As in the dismissed Second Action, Mr. Zherka asserted claims for declaratory relief, breach of contract, and breach of the implied

covenant of good faith and fair dealing against Arch (Fourth Action at Dkt. 1).

Additionally, he asserted claims against the other defendants variously for

violations of Mass. Gen. Laws ch. 93A and 176D, fraud (in and out-of-court),

tortious interference, civil conspiracy, abuse of process, false advertising/fraud in

the inducement, and aiding and abetting fraud and tortious interference (*id.*). In his

complaint, Mr. Zherka alleges that he has acquired all rights, title, and interest in

the claims by way of assignments from Maple Street and Silas and attaches two

assignment of interest in claims agreements dated May 8, 2024 (though the second

agreement is largely illegible) (*id.* at Dkt. Nos. 1, ¶ 32; 1-4). A number of motions

are pending in the Fourth Action, including Mr. Zherka's motion to disqualify the

law firms Zelle LLP and Egan, Flanagan and Cohen, PC, from representing the

defendants in that litigation, as well as a motion to dismiss by the defendants (*id.* at

Dkt. Nos. 23, 31).

On September 25, 2025, the court issued an order on a motion by Arch for a

confidentiality order governing discovery in the First Action (Dkt. Nos. 142-143).

Arch's motion was premised on its assertion that, in early December 2024, Mr.

Zherka had used, or caused to be used, information it produced in discovery to make

Mass. Gen. Laws ch. 93A demands on it, Thornton Tomasetti, Athens, Young &

Associates, NSM Insurance, Davey, and Nussbaum (Dkt. No. 142, at 3). In issuing

its order granting the motion and imposing the confidentiality order, the court

noted that Mr. Zherka had supported his quest to take over as plaintiff from Maple

Street in the First Action "by insisting vociferously that he is the sole party with a

legal and financial interest in pursuing [Maple Street's] coverage claim against Arch (*id.* at 6). In evaluating Mr. Zherka's representations, the court considered the following about Mr. Zherka: (1) his plea of guilty to one count of conspiracy to make a false statement to a bank and to sign a false federal income tax return in violation of 18 U.S.C. § 371, *Zherka v. Bondi*, 140 F.4th 68, 70 (2d Cir. 2025); (2) the Second Circuit's statement in an opinion rejecting his challenge to the constitutionality of 18 U.S.C. § 922(g)(1)'s prohibition against possession of a firearm by a convicted felon that:

> Although Zherka's offense conduct was nonviolent, his crime was serious; he defrauded federally insured banks of tens of millions of dollars and flouted the tax laws of this country to the tune of over one million dollars in tax loss. Zherka was sentenced to 37 months' imprisonment and three years of supervised release, and ordered to pay approximately $8.5 million in fines, restitution, and forfeiture.

*Id.* at 70-71; and (3) a decision by the Second Circuit affirming the district court's decision to incarcerate Mr. Zherka pending trial on the charges that resulted in his guilty plea based on the lower court's findings that Mr. Zherka was a risk of flight and "a danger to the community by reason of prior instances of violence (and more recent boasts about that violence), as well as a history of obstruction of justice …." *United States v. Zherka*, 592 F. App'x 35, 36 (2d Cir. 2015) (unpublished). The court also noted that Maple Street's losses had grown from an initial $23,255.00 for repairs to, according to Mr. Zherka, an amount exceeding $17 million (Dkt. No. 142, at 7).

Mr. Zherka filed the instant motions for substitution and for a limited stay of discovery pending resolution of the substitution motion in the First Action on December 17, 2025 and December 26, 2025, respectively (Dkt. Nos. 161, 164). Thereafter, the parties sought a third extension to the deadline for completion of non-expert discovery (Dkt. No. 173). In Arch's assented to motion, Arch noted that the parties had exchanged written discovery requests and completed two site visits but needed more time to complete discovery as a result of "unexpected delays, including the filing of multiple parallel actions and appeals and briefing in this action by Selim Zherka" (Dkt. No. 173, at 1). The undersigned granted the motion and established the current deadline for completion of non-expert discovery of June 29, 2026 (Dkt. No. 179).

Counsel for Maple Street and Arch traveled to Florida for the combined individual and Fed. R. Civ. P. 30(b)(6) deposition of Maple Street's designee Dominica O'Neill, to take place on February 26, 2026 (Dkt. Nos. 200, ¶¶ 7-8; 201, ¶¶ 9-10; 206, ¶ 7). While Maple Street had previously identified Mr. Zherka as its 30(b)(6) representative, on December 28,2025, it designated Ms. O'Neill, the manager of Maple Street (Dkt. Nos. 200, at 6; 201, ¶¶ 4-5). Nevertheless, counsel for Maple Street advised counsel for Arch in writing that "Mr. Zherka will be present at all depositions" (Dkt. No. 201, ¶ 6). Arch's counsel responded in writing three days later that Arch "reject[s] your demand that Mr. Zherka attend the depositions in this matter [as] [h]e is neither a party nor the corporate representative of Maple Street" (Dkt. Nos. 200-1, at 5; 201, ¶ 7). Neither party appears to have raised the

12

issue of Mr. Zherka's attendance at depositions in this matter again until Mr. Zherka appeared at the offices where Ms. O'Neill's February 26, 2026, deposition was to occur and insisted he should be permitted to attend (Dkt. Nos. 200, ¶ 13; 201, ¶¶ 8, 12, 16-17). Arch's counsel immediately filed the instant emergency motion for relief (Dkt. Nos. 186; 200, ¶ 16 ). The court subsequently denied the requested emergency relief, noting that both parties appeared to have been dilatory in bringing the issue to the court's attention until the last minute (Dkt. No. 189).[3] The court continued the deposition and indicated that a hearing on the motion would be scheduled (Dkt. No. 189).

On April 1, 2026, the court issued an order dismissing the Third Action and enjoining Mr. Zherka from "filing any new civil actions relating to the loss caused by freezing and ice damage at 154-164 Maple Street, Springfield, Massachusetts on February 10, 2023, unless he obtains leave of court prior to filing, upon a Motion to Institute Lawsuit and upon good cause shown," subject to the imposition of monetary or other sanctions (Third Action at Dkt. Nos. 78-79). In doing so, the court adopted the undersigned's March 9, 2026, report and recommendation that the complaint be dismissed on res judicata grounds and agreed that Mr. Zherka's behavior in these proceedings has exceeded mere litigiousness and risen to the level of vexatious conduct, thereby justifying the prohibition on filing further pro se

---

[3] There appears to be a number of disputes between counsel for Arch and counsel for Maple Street about the latter's initial position on the emergency motion and statements he may or may not have made about Mr. Zherka's attendance at the deposition. The court need not and does not resolve these disputes for purposes of resolving the instant motions.

complaints related to the same subject matter absent a showing of good cause (Dkt. Nos. 74, 77). *Siri v. Town of Hingham*, 662 F. Supp. 3d 44, 49 (D. Mass. 2023) ("Courts in [the First Circuit] have repeatedly found that a plaintiff who files multiple frivolous and vexatious lawsuits arising out of the same or similar events can be enjoined from filing further lawsuits without leave." (quoting *Clemens v. Town of Scituate*, No. 13-11598-FDS, 2014 WL 12792990, at *6 (D. Mass. June 16, 2014))).

## III.   DISCUSSION

### A.   Mr. Zherka's Motions for Substitution or Joinder and a Stay of Discovery

#### 1.   *Legal Standard*

Federal Rule of Civil Procedure 25(c) provides "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." As set forth in the court's order denying Mr. Zherka's initial motion for substitution:

> Under Rule 25(c), "district courts may, in their discretion: (1) permit the predecessor to continue alone; (2) substitute the successor-in-interest for the predecessor; or (3) join the successor-in-interest with the predecessor." *Romano v. Computershare, Inc.*, No. 3:17-CV-10208-MGM, 2020 WL 13563668, at *2 (D. Mass. Nov. 4, 2020). "The most significant feature of Rule 25(c) is that it does not require that anything be done after an interest has been transferred. The action may be continued by or against the original party, and the judgment will be binding on the successor in interest even though the successor is not named." Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1958 (3d ed.). This court, therefore, has "has considerable leeway to allow [or not allow] the substitution of parties

14

> in order to facilitate the conduct of the litigation." *Potvin v. Speedway LLC*, 891 F.3d 410, 416 (1st Cir. 2018) (alteration added; internal quotation marks omitted).

(Dkt. No. 92). Rule 17, which Mr. Zherka cites as supporting his request for Rule 25(c) substitution, provides that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a).

Federal Rule of Civil Procedure 19, which governs required joinder of parties, provides, in pertinent part, that: "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: …(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a). The policies underlying Rule 19 include "the public interest in preventing multiple and repetitive litigation, the interest of the present parties in obtaining complete and effective relief in a single action, and the interest of absentees in avoiding the possible prejudicial effect of deciding the case without them." *Picciotto v. Cont'l Cas. Co.*, 512 F.3d 9, 15-16 (1st Cir. 2008) (quoting *Acton Co. v. Bachman Foods, Inc.*, 668 F.2d 76, 78 (1st Cir.1982)). To promote these interests, "the rule provides for the joinder of 'necessary' parties when feasible," and "the dismissal of suits when the court determines that the joinder of 'necessary' parties is not

15

feasible, but that they are, nonetheless, so 'indispensable' that the suit must not be litigated without them." *Id*. at 15 (citing Fed. R. Civ. P. 19(a) and (b)).

  2. *Application*

  As set forth above, the district court denied Mr. Zherka's original motion for substitution on April 2, 2025, based on its finding that granting substitution would not "facilitate the conduct of this litigation," given "Mr. Zherka's conduct in this case and the two related cases he has filed before this court, as well as his history of misconduct in the Southern District of New York, also weigh[ing] heavily against him" (Dkt. No. 92). Based on its conclusion that "[a]llowing Mr. Zherka to appear would impact in a severely negative way the conduct of this litigation and violate the long-established rules forbidding non-attorneys from representing business entities," the court exercised its discretion to deny substitution (Dkt. No. 92).

  Mr. Zherka's asserted basis for renewing his request for substitution is "post-April 2, 2025, record developments and subsequent judicial admissions confirming complete transfer and non-ownership …." (Dkt. Nos. 161, at 4; 183-1, at 5). Mr. Zherka argues that on January 7, 2025 (nearly four months before the original order denying substitution), he obtained all legal interests relevant to this dispute from Maple Street and Silas via assignment agreements; that Arch had in its possession "long before March 27, 2025," a list of documents "irrefutably establish[ing] [his] ownership, standing, and mortgage status" (Dkt. No. 161, at 4); and that, between March 7, 2025, and November 7, 2025, Arch and Maple Street made a number of what he characterizes as "judicial admissions" that confirm his

ownership and mortgagee status (Dkt. Nos. 161, at 6-9; 183-1, at 5-6). Mr. Zherka

claims that these facts establish that he has Article III standing while Maple Street

does not, thereby creating a constitutional defect; that Fed. R. Civ. P. 17(a) requires

this action to proceed in his name as the "real party in interest;" and that this case

presents a "[p]aradigmatic Rule 25(c) [s]cenario" (Dkt. No. 161, at 16). Mr. Zherka

makes no substantive argument in support of his alternative request for joinder

under Rule 19.

Notwithstanding the absence of argument from Mr. Zherka regarding

joinder, Maple Street's supporting memorandum addresses only joinder under Fed.

R. Civ. Pro. 19, making conclusory allegations that Mr. Zherka is both "necessary"

and "indispensable" under the rule, without citation to authority to support either

proposition. For its part, Arch argues that Mr. Zherka's motion is barred by the

doctrines of res judicata, specifically issue preclusion, and law of the case. In

addition, Maple Street notes that the pro se bar to corporate representation remains

applicable.

The court concludes that Mr. Zherka is not entitled to substitution but not for

the reasons offered by Arch, which have no applicability to Mr. Zherka's motion.

Issue preclusion applies where a litigant seeks to litigate an issue that is the same

as one that was actually litigated, determined, and essential to a valid and binding

final judgment in an earlier action. *Rodríguez-García v. Miranda-Marín*, 610 F.3d

756, 770 (1st Cir. 2010). The doctrine is not applicable as a bar to litigation of an

issue in the same case in which it was purportedly already litigated, which is how

17

Arch attempts to use it here. *See, e.g., Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30 (1st Cir. 1994) (identifying the first element of issue preclusion as "the issue sought to be precluded must be the same as that involved in the prior action"). The doctrine of law of the case, on the other hand, "[a]s most commonly defined, … posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Harlow v. Children's Hosp.*, 432 F.3d 50, 55 (1st Cir. 2005) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983) (citation and footnote omitted)). "[I]nterlocutory orders … remain open to trial court reconsideration, and do not constitute the law of the case." *Id.* (quoting *Pérez-Ruiz v. Crespo-Guillén*, 25 F.3d 40, 42 (1st Cir. 1994)). The court's discretionary decision not to allow substitution was not a decision upon a rule of law and constituted an interlocutory order, rendering the law of the case doctrine inapplicable.

Nevertheless, the court denies Mr. Zherka's motion whether considering it as a standalone motion for substitution or as a motion for reconsideration of the court's previous order denying him substitution. As was the case when it denied Mr. Zherka's original substitution motion, the court has considerable leeway under Rule 25(c) in deciding whether to allow Maple Street to continue alone, substitute Mr. Zherka for Maple Street, or join Mr. Zherka with Maple Street. *Potvin*, 891 F.3d at 416; *Romano*, 2020 WL 13563668, at *2. The court exercised its discretion nearly one year ago to deny substitution and allow Maple Street to continue alone because "Mr. Zherka's conduct in this case and the two related cases he … filed before this

18

court, as well as his history of misconduct in the Southern District of New York …

weigh[ed] heavily against him" and informed its finding that granting substitution

would not "facilitate the conduct of this litigation" (Dkt. No. 92). Mr. Zherka's

conduct, which the undersigned has found exceeds mere litigiousness and rises to

the level of vexatiousness, has continued unabated in this case and in the three

related cases he has filed before this court (Third Action at Dkt. No. 74). Hence, the

undersigned, in the exercise of discretion, reaches the same conclusion as the

district judge and decides that denial of substitution is appropriate.

The court arrives at the same result if it re-characterizes Mr. Zherka's motion

as a motion for reconsideration of the district judge's April 2, 2025, order denying

substitution. Federal Rule of Civil Procedure 60 provides, in pertinent part, that

"the court may relieve a party or its legal representative from a[n] … order … for

the following reasons: (1) mistake …;  [or] (2) newly discovered evidence …." Fed. R.

Civ. P. 60(b). Relief under Rule 60(b) is "'extraordinary in nature' and, thus,

'motions invoking that rule should be granted sparingly.'" *Unibank for Sav. v. 999

Private Jet, LLC*, No. 4:18-40134-TSH, 2021 WL 920850, at *1 (D. Mass. Feb. 3,

2021) (quoting *Fisher v. Kadant, Inc.*, 589 F.3d 505, 512 (1st Cir. 2009) (citations

omitted)). "To obtain relief, the movant must demonstrate either that newly

discovered evidence (not previously available) has come to light or that the

rendering court committed a manifest error of law." *Palmer v. Champion Mortg.*,

465 F.3d 24, 30 (1st Cir. 2006) (citing *Marie v. Allied Home Mortg. Corp.,* 402 F.3d

1, 7 n. 2 (1st Cir.2005)). The only post-April 2, 2025, "evidence" Mr. Zherka cites are

19

the supposed "judicial admissions" by Arch and Maple Street regarding Mr.

Zherka's status as the assignee of Maple Street and Silas. However, the court

explicitly held that "the validity or invalidity of the assignment is ultimately not

relevant to resolution of this motion" (Dkt. No. 92). Thus, Mr. Zherka's presenting

to the court with the alleged new evidence as to the validity of the assignments is

utterly immaterial. Nor has Mr. Zherka argued or shown that the court committed

a manifest error of law in its Rule 25(c) analysis.

Mr. Zherka's contention that denial of substitution under the circumstances,

where Maple Street has assigned him all its rights in the litigation, implicates and

violates Article III standing is similarly unpersuasive. Article III standing requires

a determination of whether, "at the commencement of the litigation," a plaintiff

asserts a "personal injury fairly traceable to the defendant's allegedly unlawful

conduct and likely to be redressed by the requested relief." *Nat'l. Ass'n. of Gov't.*

*Emp's. v. Yellen*, 120 F.4th 904, 909-10 (1st Cir. 2024) (quoting *Hein v. Freedom*

*from Religion Found.*, 551 U.S. 587, 598 (1997)). There has been no evidence

presented or argument made that Maple Street lacked standing at the

commencement of this litigation such as would raise a question of Article III

standing.

Finally, the court is similarly unpersuaded that Fed. R. Civ. P. 17's mandate

that an action "must be prosecuted in the name of the real party in interest,"

requires that Mr. Zherka be substituted for Maple Street. "The First Circuit has

explained that the purpose of the real party in interest requirement is 'to protect a

20

defendant from facing a subsequent similar action brought by one not a party to the present proceeding and to ensure that any action taken to judgment will have its proper effect as res judicata.'" *Aquila, LLC v. City of Bangor*, 640 F. Supp. 2d 92, 100 (D. Me. 2009) (quoting *Prevor–Mayorsohn Caribbean, Inc. v. P.R. Marine Mgmt., Inc.,* 620 F.2d 1, 4 (1st Cir.1980)). In line with this purpose, Rule 17 provides that, before a court dismisses an action on a motion by the defendant that it is not being prosecuted in the name of the real party in interest, it will allow a "reasonable time … for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). Here, Arch has not moved for dismissal, nor would Mr. Zherka, as assignee, be entitled to duplicate any recovery Maple Street might make as assignor. As an assignee, Mr. Zherka "stands in the shoes of the [Maple Street] and has no greater rights against the [Arch] than [Maple Street] had." *Romanoff v. CitiMortgage, Inc.*, 189 F. Supp.3d 285, 289 (D. Mass. 2016) (quoting *Graves Equip., Inc. v. M. DeMatteo Const. Co.*, 489 N.E. 2d 1010, 1012 (Mass. 1986)). Accordingly, Mr. Zherka is not entitled to bring a lawsuit seeking the same damages that Maple Street might recover from Arch in this litigation. Mr. Zherka's argument that Rule 17 somehow requires the court to order substitution under Rule 25 is unpersuasive.

Finally, the court turns briefly to Mr. Zherka's alternate request for joinder, which Mr. Zherka leaves entirely undeveloped and Maple Street addresses only in perfunctory fashion by referring to Mr. Zherka as both "necessary" and "indispensable," without developing or supporting either designation. A party is

"necessary" under Rule 19 if the party "fits the definition of those who should 'be joined if feasible' under Rule 19(a)," meaning either that the litigation would impair or impede the party's ability to protect its interests, or the case would leave the defendant subject to multiple obligations. *Picciotto*, 512 at 16 (quoting *Pujol v. Shearson/American Express, Inc.*, 877 F.2d 132, 134 (1st Cir. 1989)). The question of indispensability arises only if the matter in controversy involves a "necessary" party who is non-diverse, such that his joinder would destroy the court's subject matter jurisdiction. *Id.* at 17. In such a situation, "the court must determine whether the litigation may continue in the absence of this person or whether [ ]he is so indispensable that the court should dismiss the case for want of subject matter jurisdiction." *Id.* (citing *Acton Co. v. Bachman Foods, Inc.*, 668 F.2d 76, 80 (1st Cir. 1982)).

Maple Street argues that Mr. Zherka has an interest relating to the subject of the action (Dkt. No. 170, ¶ 12), but fails to explain how "as a practical matter [disposition of the claim] might impair or impede [his] ability to protect the interest," or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(2). One or the other showing is required to establish that the person is a "necessary" party. *Id.* Instead, Maple Street skips ahead to argue that Mr. Zherka is "indispensable" to the action, which reveals a misapprehension of the rule. As to "indispensable" parties, as noted above, the question under Rule 19(b) is whether the action should proceed without the party or whether the action should

be dismissed. Rule 19(b) is not a basis for joinder. Thus, if Maple Street is correct that Mr. Zherka is a resident of Florida, (Dkt. No. 170, ¶ 10), an indispensability analysis is not needed because his joinder would not destroy diversity. *Picciotto*, 512 F.3d at 16. Regardless, in the absence of developed argument from Mr. Zherka or Maple Street that Mr. Zherka is a "necessary" party, the court need not expend more time or effort on the alternative request for joinder. *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *see also Caldwell v. Cambra*, 802 F. Supp. 3d 8, 29 n.4 (D. Mass. 2025) (applying the *Zannino* waiver rule at the district court level).

For these reasons, the court denies Mr. Zherka's motion for substitution or joinder, a ruling that moots Mr. Zherka's motion for a stay of discovery

B. Motion for Protective Order and Related Motions

1. *Legal Standard*

Rule 26(c)(1)(E) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... designating the persons who may be present while the discovery is conducted ...." Fed. R. Civ. P. 26(c)(1)(E). "Rule 26(c) is highly flexible, having been designed to accommodate all relevant interests as they arise...." *Gill v. Gulfstream Park Racing Ass'n., Inc.*, 399 F.3d 391, 402 (1st Cir. 2005) (quoting *United States v. Microsoft Corp.*, 165 F.3d 952, 959–60 (D.C.Cir.1999)). The flexible standard "requires an individualized balancing of the

many interests that may be present in a particular case." *Id.* (quoting *Microsoft Corp.*, 165 F.3d at 960). "The district court has 'broad discretion' to decide 'when a protective order is appropriate and what degree of protection is required,' *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984), and great deference is shown to the district judge in framing and administering such orders." *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 532 (1st Cir. 1993) (citing *Public Citizen v. Liggett Group, Inc.,* 858 F.2d 775, 790 (1st Cir.1988), *cert. denied,* 488 U.S. 1030 (1989); 8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2036 (1970)).

### 2. *Application*

Arch's motion for a protective order prohibiting Mr. Zherka from attending depositions in this matter is premised on the contention that his presence will obstruct the proceedings. For support, Arch cites Mr. Zherka's history in this case, including his demonstrated disregard for the Federal Rules of Civil Procedure; his filing of multiple lawsuits in this court all related to the same February 10, 2023, loss; and his history of misconduct, obstruction of justice, and violence in the Southern District of New York. According to Arch, Mr. Zherka's actions have already served to interfere with and delay these proceedings, as evidenced by the fact that, 27 months into the litigation, the parties have yet to conduct a single deposition.

Maple Street counters that precluding Mr. Zherka from attending depositions would be detrimental to its interests because "Mr. Zherka possesses unique knowledge of the damage [to the property], the efforts to resolve the damage and

24

the dealings with [Arch] during Maple [Street]'s efforts to process their insurance claim" (Dkt. No. 206, ¶ 4). As a result, "Maple [Street]'s benefits to have Mr. Zherka at the depositions is massive and allows for Maple [Street]'s counsel and witnesses to manage the inquiries of facts from the various witnesses being deposed" (*id.*). Countering Arch's concerns of disruption, which Maple Street characterizes as speculative, counsel for Maple Street avers that he is "certain Mr. Zherka will remain as a 'potted plant' throughout the entire deposition" (Dkt. No. 206, ¶ 3).

The court readily concludes that the protective order Arch seeks barring Mr. Zherka from attending any depositions in this matter other than his own is appropriate and supported by good cause. Arch has a strong interest in mounting as timely a defense to Maple Street's claim as possible after the passage of over two years, particularly in light of the burgeoning dollar figure Mr. Zherka seems to attach to the claim. Of course, "[a] finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements." *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986). Here, Arch has made a "factual demonstration of potential harm" based on Mr. Zherka's record of disruptive behavior in this court, as well as his record for obstruction, deceit, and violence in the Southern District of New York. This amply qualifies as a non-theoretical foundation for a "concern of potential harm." Arch does not have to wait for Mr. Zherka to actually disrupt a deposition in this case to be entitled to relief. *Bell ex rel. Est. of Bell v. Bd. of Educ. of Cnty. of Fayette*, 225 F.R.D. 186, 196 (S.D.W. Va. 2004) (noting that an individual may be excluded from attending a

25

deposition "upon a specific showing that they might act coercively or disruptively."); *Galella v. Onassis*, 487 F.2d 986, 997 (2d Cir. 1973) (finding no abuse of discretion by the district court in excluding the plaintiff from the defendant's deposition under a prior version of Fed. R. Civ. P. 30 where "anticipation of misconduct during the examination could reasonably have been founded" on the plaintiff's having been charged with violating the court's temporary restraining order, which "could be deemed to reflect both an irrepressible intent to continue plaintiff's harassment of defendant and his complete disregard for judicial process").

On the other side the balance is Maple Street's asserted need to have Mr. Zherka at the deposition as a unique repository of facts. This argument strains both credulity and logic. At the hearing on the motion for the protective order, counsel for Maple Street argued, as he does in his declaration, that Mr. Zherka's presence at the Rule 30(b)(6) and other depositions is of "massive" importance to his ability to successfully litigate Maple Street's claims. However, when asked by the court if he knew Mr. Zherka was going to attend the scheduled February 26, 2026, deposition, he replied he was "fifty-fifty."[4] Given this representation by counsel that it was as likely that Mr. Zherka would show up at the deposition as that he would not, it is

---

[4] While counsel for Maple Street put his belief that Mr. Zherka would appear at the deposition at fifty percent when asked by the court during the hearing, he represented in a letter to the court that "Defendant's counsel was aware that Selim Zherka was attending the deposition more than several weeks ago," (Dkt. No. 187), and in his declaration that he "personally made Defendant's counsel aware that Mr. Zherka was going to attend the depositions" (Dkt. No. 206, ¶8). These representations that counsel for Arch knew Mr. Zherka would be at the deposition because counsel for Maple Street so informed them, while he himself was only fifty-fifty on whether Mr. Zherka would be there are in some tension with one another.

26

difficult to lend much credence to the argument that his presence is imperative to Maple Street's counsel's ability to effectively litigate its claims. Moreover, Maple Street's asserted need for Zherka's presence does not stand up to logical scrutiny. It may very well be that Mr. Zherka has "unique and exclusive knowledge … regarding literally every single question that can be asked at any deposition about the efforts to adjust, estimate and repair the subject damaged building" (Dkt. No. 206, ¶ 5). That would certainly make him a very important witness for Maple Street and a key witness for Arch to depose (an effort Mr. Zherka has apparently resisted based on the excuse that he was waiting for a ruling on this newest effort to insert himself into the case). The other witnesses, including Maple Street's 30(b)(6) designee, however, must answer questions put to them at the depositions based on their own knowledge. It would be inappropriate for Mr. Zherka to "manage the inquiries of facts" put to other witnesses, as counsel suggests, even if he has "unique and exclusive" knowledge of the facts in this case (Dkt. No. 206, ¶ 4). Moreover, a protective order preventing Mr. Zherka from attending any depositions in this matter does not prevent counsel for Maple Street from consulting with Mr. Zherka as he prepares for depositions or having Mr. Zherka present as he prepares witnesses, although, as to the latter, Mr. Zherka's presence would destroy any claim of attorney-client privilege as to any the preparation sessions he attends, as recognized by Maple Street's counsel during the hearing,.

One final issue bears addressing on the question of the protective order. At the hearing on the motion, counsel for Maple Street represented that he had found

27

relevant case law supporting his position that a protective order would be inappropriate in these circumstances. While the court made clear that relevant caselaw should have been included in the initial briefing, the court allowed Maple Street leave to file a 5-page supplemental pleading, while giving Arch the opportunity file a 5-page response to that pleading. The case Maple Street primarily relies on in its supplemental pleading, *Picard v. City of Woonsocket*, No. CA 09-318 S, 2011 WL 3740673 (D.R.I. Aug. 23, 2011), is easily distinguishable. *Picard* dealt with restrictions on parties being present for depositions, not non-parties, like Mr. Zherka. Moreover, the *Picard* court did issue an order precluding the defendants from being in the same room as the plaintiff during her deposition, albeit requiring that they be able to see and hear the deposition via video conferencing in a nearby room. *Id.* at *4. Thus, Plaintiff's supplemental pleading, including *Picard* and other authorities cited, is of no assistance.

Arch responded by filing a 5-page brief, accompanied by an 88-page attachment. The attachment consists of a 6-page letter from a law firm on the opposing side of a case involving Maple Street's counsel of record, Rex Whitehorn, and Mr. Zherka to U.S. Magistrate Judge Gabriel W. Gorenstein of the Southern District of New York, as well as an 80-page "rough draft" of a deposition transcript (Dkt. Nos. 209, 209-1). These materials purport to show "Rex Whitehorn, and Zherka, as a pro se party, worked together, as they want to do here, to disrupt depositions and obstruct proceedings" (Dkt. No. 209, at 1). This filing prompted counsel for Maple Street to file a letter requesting that Arch's supplemental filing

28

be stricken as exceeding the 5-page limit and arguing that it would be insufficient to strike only the 88-page attachment because the brief and attachment are inextricably interwoven (Dkt. No. 201).

Arch has offered no explanation for its filing of this lengthy attachment after the hearing on the motion for protective order and where the attachment is not responsive to the case law addressed in Maple Street's supplemental pleading, limited as it was by the court. That said, the court does not agree with Maple Street that the entirety of Arch's supplemental filing is inextricably interwoven with the attachment. Only the first part of the brief, accounting for less than half of it, addresses the attachment. The remainder of the brief discusses case law unconnected to the attachment, relevant to the issue of the propriety of the protective order Arch seeks, and responsive to Plaintiff's supplemental briefing. In any event, the court need not wade too deeply into the conflict regarding the supplemental briefing because the court has found good cause for the protective order without considering the attachment or any of Arch's argument premised upon it. Thus, the court finds it unnecessary to entertain Maple Street's request that the pleading be stricken.

C. Costs

Arch included in its motion a request for sanctions, consisting of the fees and costs for Arch's counsel traveling to Florida for the scheduled deposition. Pursuant to Fed. Rule Civ. P. 26(c)(3), "Rule 37(a)(5) applies to the award of expenses" in connection with motions for a protective order. Fed. R. Civ. P. 26(c)(3). Regarding

29

costs, Rule 37 establishes that, "[i]f the motion is granted … the court must, after giving an opportunity to be heard, require the party … whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses in making the motion, including attorney's fees …," unless certain circumstances are present, including that "circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5). While this is a close case, neither side was completely blameless in this issue not being resolved until after counsel had traveled to Florida for the deposition. Accordingly, each side will bear its own costs.

## IV.    CONCLUSION

For the foregoing reasons, Mr. Zherka's motion to file a reply brief in further support of his substitution or joinder motion (Dkt. Nos. 183) is ALLOWED, but his motion for substitution (Dkt. No. 161) is DENIED, rendering his motion for a stay of discovery (Dkt. No. 164) MOOT; Defendant's motion for a protective order enjoining Mr. Zherka from attending any of the depositions in this matter is GRANTED (Dkt. No. 186); and Defendant's motion to strike Zherka's non-party filings, including his response at Dkt. Nos. 188 and his motion at Dkt. No. 202 (Dkt. No. 205) is GRANTED. A separate protective order will issue. Each side to bear its own costs.

/s/ Christopher L. Morgan
CHRISTOPHER L. MORGAN
United States Magistrate Judge

DATED:  April 7, 2026

30